**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-17-493 |
| | * | |
| **JAMES DAVIS,** | * | |
| Defendant. | * | |
| * * * * * * * * * * * * * | | |

**MEMORANDUM OPINION**

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established procedural safeguards designed to protect the Fifth Amendment privilege against self-incrimination. U.S. Const. amend. V. Before suspects in a criminal investigation can be interrogated, *Miranda* requires that law enforcement officers provide suspects with basic information about these rights, including that they have "a right to remain silent, that any statement [they] make can be used against [them], and that [they have] the right to the presence of an attorney." 384 U.S. at 444. Though suspects may waive the right to remain silent, they cannot be coerced to do so. *Id.* And the right to an attorney is sacrosanct; once invoked, it is vital that the "interrogation must cease until an attorney is present." *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (quoting *Miranda*, 384 U.S. at 474). In this case, the Defendant clearly asked for an attorney on no fewer than three occasions at the beginning of his interrogation, to which law enforcement officers responded primarily with efforts to persuade and pressure the Defendant into choosing to waive the right instead. Although the Court finds no merit in Defendant's allegations that officers used access to his cell phone as leverage to coerce a waiver, because the Court holds that law

1

enforcement officers should have stopped interrogating Defendant after he requested an attorney, the statements made by Defendant during the interrogation will be suppressed.

The Government has charged Defendant James Donnell Davis with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, two counts of possession with the intent to distribute a controlled substance, and one count of being a felon in possession of a firearm. ECF No. 1 at 1-5.[1] Presently pending before the Court is Defendant's Motion to Suppress Statements. ECF No. 76 at 1. An evidentiary hearing was held on August 20, 2018. ECF No. 91. For reasons explained in more detail below, Defendant's Motion to Suppress Statements is granted.

**I.   BACKGROUND**

On May 25, 2018, Defendant filed a motion to suppress statements made during his September 28, 2017, interview with law enforcement. ECF No. 76 at 1-2. The Government opposed this motion. ECF No. 85. At the evidentiary hearing held on August 20, 2018, the Government presented two witnesses: Federal Bureau of Investigation Special Agent Margaret Mande and Prince George's County Police Officer Sean Chaney. The defense presented one witness: Defendant Davis. The Court will summarize its finding of facts herein.

On September 28, 2017, Defendant was arrested by law enforcement officers while taking out the trash outside his residence in Springfield, Virginia.[2] Among the officers involved were Agent Mande and Prince George's County Police Officers Chaney and Mike Margulis.

Upon Defendant's arrest, he was handcuffed and searched, and officers removed a number of items from his person, including his cell phone. These items were given to his wife.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[2] Because the official transcript of the evidentiary hearing was not immediately available, this section is prepared using the Court's notes and internal recording system.

2

While in the transport van at the scene of the arrest, Defendant—apparently concerned that his wife could discover evidence of his relationships with other women if she retained possession of his cell phone—asked officers to retrieve the phone from his wife. The officers agreed to do so, but Defendant's wife initially gave the officers the wrong cell phone. Defendant then asked if the officers would take him to the door so he could ask his wife directly for the correct cell phone. Once more, officers agreed and Defendant successfully retrieved his phone.

The parties dispute, however, the officers' motivation for helping Defendant retrieve his phone. Defendant testified that Agent Mande told him they would only help him get his phone if he agreed to "help [him]self." He further testified that Officer Margulis held onto his cell phone in the transport van, and told him that only "when you do what you got to do, you'll get your phone back." Agent Mande and Officer Chaney testified that neither they, nor any of the other officers, ever made any such suggestion. Neither of the government witnesses testified to when or how the cell phone was returned to Defendant, but Defendant himself testified that it was not returned until Officer Margulis gave the phone to a United States Marshal just prior to Defendant's release at the courthouse. During the approximately hour-and-a-half of Defendant's videotaped interrogation, none of the parties made any reference to Defendant's cell phone or its use as leverage.

After Defendant's arrest, he was transported to the Criminal Investigation Division of the Prince George's County Police Department on Barlowe Road. He was placed into an interrogation room where he was joined by Agent Mande and Officers Margulis and Chaney. Agent Mande handed Defendant a Federal Bureau of Investigation Advice of Rights form that contains an explanation of Defendant's *Miranda* rights. ECF No. 85-3 at 2. As Agent Mande verbally explained these rights, the following video-recorded exchange occurred:

3

Mande: And if you decide to answer questions now, without a lawyer present, you have the right to stop answering questions at any time.

Davis: If, if I'm, if I'm going to answer questions, I'm going to need a lawyer here.

Mande: Alright, well, this is just so you understand that…and then down here, it's just now we're, this is the part where, if you want a way to talk to us and answer questions, that's where you sign there. If you don't want to talk to us, don't…

Davis: I want to talk to you, but I just need my lawyer.

Chaney: Ok, ok, so here's what you're telling us—you do want your lawyer?

Davis: I want to talk, yeah. But I need my lawyer present.

Chaney: We wanna… either you talk to us now…if you want to talk to us now, without anybody else present, you have to sign that waiver. If not, all bets are off, you go into the system, ok?

Margolis: And this isn't sitting here to discuss your charges here and to talk to you and ask you questions about your charges here. That's not what that's for. We're here for you to tell us what you think you want to do to try to help yourself out. I'm not here to ask you questions about your case today, or go into it today. You're going to get all that, you're going to get your paperwork today when you have your initial appearance.

Davis: My question is this, alright. If y'all want me to…such and such…I can't be going to jail, and then…

[crosstalk]

Margolis: Like I told you this, you tell us something, and then…

Davis: Y'all not gonna promise me I'm not going to jail.

Margolis: No, I can't promise you anything. All we can do is tell the U.S. Attorney that you want to cooperate. And it will be up to the judge. Not up to any of us. And again, like I told you…you hold…your destiny's in your own hands right now. You do what you want to do.

Davis: Yeah, but why can't I do that with an attorney?

Margolis: Sign the form that says you don't want to talk to us without your, without your attorney…I...I don't have time to play games.

Davis: I'm not playing no games.

> Margolis: It is a game. Uh, sign right here. Uh…
>
> Chaney: Mr. Davis, you have the right to...you know what your rights are. If you want to sit and you want to talk to us, now is the time. We cannot talk…

After further discussion, the encounter continued:

> Davis: And there won't be no other time when I get a chance to help myself.
>
> Margolis: Well, you will. Yes, after you talk to your attorney. Yes. If you want to talk to us you tell your attorney you want to come in. But that's…we're not going to do, I'm not going to do anything to try to get you released today, so…and that's just…
>
> Davis: It's a way I could get released today?
>
> Margolis: Very good possibility. But again, I can't promise you that. And again, like I told you, it would be what you told us, what you think you can do for us. Again, I already have you here. So I'm not here to ask you any questions about any of that. We have you here. That's what you're here for. It's what you want to do to help yourself out.
>
> Davis: Ok, so…so what can I do?
>
> Chaney: Sign the form! We cannot discuss anything until…you understand that, right?
>
> [Davis begins signing the form]
>
> Davis: Yeah
>
> Mande: And you understand that your rights are always written right here, every right that exists?
>
> Davis: Yeah
>
> Margolis: You want to talk to us right now without your attorney present? Right now?
>
> Davis: Yeah

After signing the waiver of his right to an attorney, Defendant made the statements that are the subject of the pending motion to suppress.

## II.   DISCUSSION

Defendant offers two arguments in favor of suppression of the statements made during his September 28 interview with law enforcement. First, he contends that his written and verbal

5

waiver of his *Miranda* rights were involuntary because Agent Mande only agreed to recover Davis' cell phone from his wife if Davis agreed to the interview, and Officer Margulis only agreed to return the cell phone if Davis cooperated. Second, Defendant argues that law enforcement officers improperly continued to interrogate him after he had made a request for an attorney. ECF No. 76 at 1.[3]

### A. Defendant's Cell Phone

Defendant contends that law enforcement officers, recognizing that Davis was worried that his wife would discover evidence of his infidelity on his cell phone, used Davis' fears as leverage to convince him to waive his *Miranda* rights.

Defendants may waive their *Miranda* rights, "provided the waiver is made voluntarily, knowingly, and intelligently." 384 U.S. at 445. Coercive police activity is a necessary finding for a confession to be considered involuntary, *see United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017), but the "proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination is critically impaired." *Id*. "The government bears the burden of proving by a preponderance of the evidence that the statement was voluntary." *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997). Only defendants who are in custody and subject to interrogation are protected by the safeguards outlined in *Miranda*. *See Giddins*, 858 at 879. The parties do not dispute that Davis was in custody and subject to interrogation, so the question is whether Agent Mande, or Officers Margolis or Chaney, used access to Defendant's cell phone as leverage to coerce him to waive his *Miranda* rights.

The Court has heard conflicting testimony regarding the use of Defendant's cell phone as leverage. Agent Mande testified that during transport no officer made any promises or threats to

---

[3] In the written submission, Davis also suggests that he was interrogated while in the transport vehicle before having been read his *Miranda* rights. The government has not identified any statements made by Davis while in the transport vehicle that it intends to offer at trial, so the Court need not consider this argument.

Defendant based on whether he chose to speak with law enforcement. Similarly, Officer Chaney testified that no officer made any promises or threats to Defendant while in his presence. On the other hand, Defendant testified that Agent Mande specifically told him she would only help him get his phone if he "helped [him]self." He further testified that during the transportation to the Barlowe Road precinct, Officer Margulis said he would only get the phone back "when [he] do what [he] go to do," which Defendant took to mean they wanted him to give them information.

It is the duty of the finder of fact to reconcile conflicting testimony. By his own testimony, Defendant cared deeply about regaining access to his phone and keeping it out of the hands of his wife. After asking officers to retrieve his phone at the scene of the arrest, he asked again, during transport, when he would get his phone back. If, as Defendant claims, the cell phone was being held as a tool to coerce compliance, one would expect some mention of this during the lengthy recorded exchange in which officers are attempting to convince Defendant to speak with them. And yet, though Defendant complied with the officers' alleged conditions, neither he nor the officers make any reference to the alleged deal during the entire interrogation, which the Court was able to review. The Court will thus credit the testimony of Agent Mande and Officer Chaney and find that none of the law enforcement officers used Defendant's cell phone as leverage to coerce him to waive his *Miranda* rights.

### B. Defendant's Interrogation

Defendant next argues that law enforcement officers improperly continued to interrogate him after he had invoked his right to an attorney. The Government counters that Defendant never invoked his right to an attorney and, alternatively, if he did, that the request was equivocal. The Government contends that, after the officers clarified Defendant's questions about his right to an attorney, he knowingly and voluntarily waived the right.

7

The assertion of the right to counsel is a "significant event." *Edwards*, 451 U.S. at 485. The invocation of the right to an attorney is not an invitation to negotiate a waiver. *See Davis v. United States*, 512 U.S. 452, 452 (1994). Rather, the invocation of the right must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). "If the suspect invokes that right at any time, the police must immediately cease questioning him until an attorney is present." *Davis*, 512 U.S. at 452. Suspects who invoke the right to counsel are "not subject to further interrogation by the authorities until counsel has been made available . . . unless the accused . . . initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. This rule is designed to prevent "officers from badgering a suspect into waiving his previously asserted *Miranda* rights." *Davis*, 512 U.S. at 452. *See also United States v. Johnson*, 400 F.3d 187, 193-94 (4th Cir. 2005) (quoting *Smith v. Illinois*, 469 U.S. 91, 98 (1984)) ("The purpose of the rule formulated in *Edwards* is to prevent police 'badgering or overreaching—explicit or subtle, deliberate or unintentional.'"). Post-invocation responses to police-initiated interrogation do not constitute a valid waiver of the right. *Edwards*, 451 U.S. at 484. It is the government's burden to prove a suspect's waiver of rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

But if a suspect makes a statement or request that only ambiguously or equivocally refers to a desire for an attorney, *Edwards* does not require that officers stop questioning the suspect. *Davis,* 512 U.S. at 452. A statement's ambiguity is analyzed from the perspective of a reasonable officer in light of the circumstances. *Id*. This is an objective inquiry. *Id*. at 458-59. In other words, a suspect must articulate the "desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 459. The determination of the ambiguity of a request is made by analyzing

the initial request, not taking into account a suspect's subsequent responses to further interrogation. *Smith*, 469 U.S. at 91. Statements made by a suspect in the absence of counsel subsequent to the invocation of the right to an attorney are presumed involuntary and inadmissible, even when they would be considered voluntary under traditional standards. *See McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). Therefore, the Court must firstly determine whether Defendant unambiguously invoked his right to counsel, and, if so, secondly determine whether Defendant initiated any further exchanges with law enforcement that led to the waiver. *See Johnson*, 400 F.3d at 194.

First, courts typically find that suspects have only ambiguously or equivocally invoked the right to counsel where the suspect's language is indicative of uncertainty. For example, in *Davis*, the Supreme Court held that the suspect's remark, "Maybe I should talk to a lawyer," was not an invocation of the right to an attorney and did not require police to stop the interrogation. 512 U.S. at 455. In *United States v. Williams*, the Fourth Circuit held that the suspect's statement, "I don't think I want to say anything more until I talk to a lawyer," was not clear and unequivocal. 446 F. App'x 587, 590 (4th Cir. 2011). The pattern among this line of cases is not difficult to find: words like "maybe," "might," "think," and "perhaps," are markers that a suspect has not made the final decision to ask for an attorney. *See also United States v. Smith*, 281 F. App'x 198, 200 (4th Cir. 2008) ("I think I might need to talk to a lawyer."); *United States v. Wheeler*, 84 F. App'x 304, 306 (4th Cir. 2003) ("wanted to call his family to see about a lawyer"); *Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) ("I think I need a lawyer."). *But see Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011) ("I think I should get a lawyer" found to be an unequivocal, unambiguous request for an attorney).

In other cases, requests for procedural information about a lawyer or requests for advice regarding whether a suspect should get a lawyer have been held not to be clear, unequivocal requests for an attorney. When a suspect asked "Gotta lawyer here right now?" and was told none were available, and then agreed to proceed with the interview without counsel, the Fourth Circuit held that the suspect had not unambiguously invoked the right to counsel. *United States v. Santiful*, 701 F. App'x 242, 244 (4th Cir. 2017). A similar determination was made in *Mueller v. Angelone*, 181 F.3d 557, 573 (4th Cir. 1999) where, midway through a four-hour interrogation, the suspect asked one of the officers, "Do you think I need an attorney here?" *See also Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002) (suspect asking whether he should get an attorney, how he could get one, and how long it would take to get one were procedural, and thus not a clear invocation of the right to counsel); *Poyner v. Murray*, 964 F.2d 1404, 1411 (4th Cir. 1992) ("Didn't you tell me I had the right to an attorney?").

In contrast, statements invoking the right to counsel that do not evince internal debate within the suspect have consistently been construed as unambiguous and unequivocal. Still, an invocation need not be spoken "with the discrimination of an Oxford don." *Davis*, 512 U.S. at 459. In *United States v. Reid*, 211 F. Supp. 2d 366, 372 (D. Mass. 2002), a suspect told an officer he had "nothing more to say." [4] The court analyzed the ambiguity of this claim by searching for "language suggesting hesitation," such as the word "maybe." *Id*. The court also looked for "communicat[ion] in a mode that is subject to multiple interpretations," such as the use of hand gestures. *Id*. Finding none, the court held that the invocation was unambiguous and unequivocal. *Id*; Courts have also found similar statements to be unequivocal. *See Illinois*, 469 U.S. at 491 ("Uh, yeah, I'd like to do that."); *Tice v. Johnson*, 647 F.3d 87, 107 (4th Cir. 2011) ("I've

---

[4] The ambiguity analysis under *Edwards* is the same for the invocation of the right to an attorney and the right to remain silent. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

decided not to say any more".); *United States v. Teemer*, 260 F. Supp. 2d 187, 196 (D. Me. 2003) ("I'm not gonna say anything after that, because that would violate my rights.").

Here, Defendant's invocation of his right to an attorney could hardly have been more clear. When Agent Mande reaches the portion of the form that includes a waiver of the right to an attorney, Defendant immediately responds, saying "If I'm going to answer questions, I'm going to need a lawyer here." Seconds later, he restates his request: "I want to talk to you, but I just need my lawyer." And after Officer Chaney asks, "here's what you're telling us—you do want your lawyer?" Defendant once more affirms his request: "I want to talk, yeah. But I need my lawyer present." Absent is any language suggesting Defendant is uncertain of what he wants, or needs more information before making his decision. Defendant has not asked a question about the wisdom of his request, nor does he have procedural questions about the availability of a lawyer. Three times, he explains his "need" for a lawyer. Any of these three statements individually would suffice to establish an unambiguous invocation of the right to an attorney. Together, the totality of these circumstances places the inquiry beyond question. *See, e.g., Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) (concluding that suspect's three questions, considered together, constituted an unequivocal request for an attorney).

The Government suggests that the clauses "If I'm going to answer questions," "If I'm going to talk," and "I want to talk, but" serve to make Defendant's request for a lawyer equivocal. But no reasonable officer could believe these clauses are evidence of uncertainty on the part of Defendant. To the contrary, they are definitive, confident, categorical statements that indicate Defendant recognizes that officers are seeking to interrogate him and that he wants an attorney present for that interrogation. The Government also contends that Defendant's willingness to talk—or at least his willingness to talk at that precise moment—was inconsistent

enough with Defendant's request for a lawyer to negate the request. But suspects may express an intent to waive their right to remain silent while retaining their right to an attorney. And any suggestion by the Government that clarification was needed because the Defendant was making an internally contradictory request is directly refuted by the waiver form itself. Indeed, Defendant was asserting the precise right he was just informed he had; to have a lawyer present during questioning. *See* ECF No. 85-3 at 2. ("You have the right to talk to a lawyer for advice before we ask you any questions." "You have the right to have a lawyer with you during the questioning.")

It is true that law enforcement officers may seek to clarify ambiguous or equivocal requests for an attorney. *See, e.g., Davis*, 512 U.S. at 453. But after Officer Chaney asks, "here's what you're telling us—you do want your lawyer?" the officers ask no more clarifying questions; rather, they engage in "precisely the sort of conduct the prophylactic rule seeks to prevent." *See Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir. 1989) (holding that officer's remark "If you want to talk to us, now is the time to do it" was not aimed at resolving ambiguity in suspect's invocation of rights). Officer Chaney makes clear the consequences for Defendant if he chooses to invoke his right to counsel: "all bets are off, you go into the system." After Defendant asks why he cannot cooperate with an attorney present, Officer Margulis grows frustrated and accuses Defendant of playing games. Later, Officer Margulis again emphasizes that if Defendant invokes his right to an attorney, he would not do anything to try to get Defendant released on the same day. These are acts of interrogation, not clarification, and they are impermissible after the invocation of the right to counsel. *See United States v. Montana*, 958 F.2d 516 (2d Cir. 1992) ("[S]tatement informing the defendants that any cooperation would be brought to the attention of the Assistant United States Attorney constituted 'interrogation.'"); *United States v. Johnson*, 812

F.2d 1329, 1331 (11th Cir. 1986) (officer's statement that cooperation would be beneficial constituted interrogation).

The Court can easily dispose of the second question of the inquiry. Officers may resume interrogating a suspect when the suspect initiates further communication, exchanges, or conversations with police. *See Edwards*, 451 U.S. at 477. Officers here never responded to Defendant's invocation of the right to counsel by stopping the interrogation, and there was thus no occasion for Defendant to initiate further communication, exchanges, or conversations with police.

Therefore, the Court holds that Defendant unambiguously and unequivocally invoked his right to an attorney, that law enforcement officers impermissibly continued to interrogate him, that his subsequently signed waiver of rights is invalid as to the September 28 interrogation, and that the incriminating statements Defendant made during that interrogation are suppressed.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Statements, ECF No. 76, is granted. A separate Order shall issue.

Date: September 7, 2018 /s/
GEORGE J. HAZEL
United States District Judge